**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
CENTRAL DIVISION**

JOSHUA M. FEATHERSTON                                                               PLAINTIFF
ADC #154947

V.                              NO. 4:21-cv-00011-BSM-ERE

CARL LEWIS, *et al.*                                                                      DEFENDANTS

**RECOMMENDED DISPOSITION**

**I.      Procedures for Filing Objections**

This Recommendation has been sent to United States District Judge Brian S. Miller. Any party may file written objections to all or part of this Recommendation. Any objections filed must: (1) specifically explain the factual and/or legal basis for your objection; and (2) be received by the Clerk of this Court within fourteen (14) days of the date of this Recommendation. If you do not file objections, Judge Miller may adopt this Recommendation without independently reviewing all of the evidence in the record. By not objecting, you may waive the right to appeal questions of fact.

**II.     Background**

Plaintiff Joshua M. Featherston filed this *pro se* § 1983 action alleging that, while in the Wrightsville Unit of the Arkansas Division of Corrections ("ADC"), Defendants Carl Lewis, Lisa D. Childress, and Michael M. Lowe (Defendants) failed

to protect him from being attacked by other inmates on September 25, 2020 and December 2, 2020.[1] *Docs. 2; 4*. According to Mr. Featherston, on September 15, 2020, he called the state police hotline to report that he was being harassed by ADC officials. *Doc. 2 at 4*. After Mr. Featherston placed the hotline call, Defendant Lewis called him to his office, along with another inmate to serve as a witness to the meeting. *Id*. In the presence of the other inmate, a known gang member, Defendant Lewis served Mr. Featherston a memorandum that threatened disciplinary action if he called the hotline again. *Id. at 5*. Mr. Featherston claims that Defendant Lewis deliberately placed him in danger by making him "look like a snitch" in front of the inmate with gang affiliations. *Id.*

The same day, September 15, 2020, Mr. Featherston wrote three grievances, complaining that Defendant Lewis had deliberately placed him in danger of an inmate attack. *Id. at 6*. Mr. Featherston recalls that Defendant Childress accepted the grievances on September 17, 2020, which he contends put her on notice that he was in danger. *Id*. According to Mr. Featherston, Defendant Childress acted as if his grievances were of no importance, and she did nothing to protect him. *Id*.

On September 25, 2020, Mr. Featherston was stabbed in his left side. He alleges that after the stabbing incident, Defendant Childress returned the grievances

---

[1] On February 2, 2021, the Court dismissed, at Mr. Featherston's request, any claim for retaliation against Defendant Lewis. *Doc. 12*.

he submitted on September 17, and he claims that she had backdated her written responses to September 21. *Id. at 7*.

After receiving medical treatment for his stab wound, Mr. Featherston was placed in an isolation cell. *Id. at 6-7*. He requested that Defendant Lowe permit him to stay in the isolation cell for his protection until he made parole. *Id. at 7*. Defendant Lowe ignored Mr. Featherston's request and returned him to the general population on December 2, 2020. *Id*. That same day, several inmates attacked Mr. Featherston in general population. *Doc. 2*.

Defendants have filed a motion for summary judgment, brief, and statement of facts, arguing that Mr. Featherston failed to exhaust his administrative remedies with respect to all of his claims. *Doc. 24, 25, 26*. Mr. Featherston has responded. *Docs. 29- 31*.

For the reasons explained below, the Court recommends Defendants' motion for summary judgment (*Doc. 24*) be GRANTED, and all of Mr. Featherston's claims be dismissed, without prejudice.

III.    Discussion

    A.    **The PLRA Makes Exhaustion Mandatory**

The Prison Litigation Reform Act ("PLRA") requires the Court to dismiss any claim raised in this action that was not fully exhausted *before* the lawsuit was filed. See 42 U.S.C. § 1997e(a) (declaring, "[n]o action shall be brought with respect to

prison conditions . . . by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted"); *Woodford v. Ngo*, 548 U.S. 81, 90 (2006) (explaining the proper exhaustion of remedies "means using all steps that the [prison] holds out, and doing so properly"); *Johnson v. Jones*, 340 F.3d 624, 627 (8th Cir. 2003) (holding an inmate must exhaust all available administrative remedies before filing suit, and "[i]f exhaustion was not completed at the time of filing, dismissal is mandatory").

Importantly, "it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion." *Jones v. Bock, Jones v. Bock*, 549 U.S. 199, 218 (2007). Thus, the PLRA required Mr. Featherston to satisfy the ADC's requirements for raising and administratively exhausting the claims he is asserting in this lawsuit before bringing this action.[2]

B.  **The ADC's Exhaustion Policy**

At all times relevant to this action, the ADC provided a three-step administrative grievance process through ADC Administrative Directive 19-34 ("AD-19-34"). *Docs. 24-1* (Grigsby-Brown Dec.); 24-2 (AD 19-34). The written policy advises inmates they must exhaust their administrative remedies at all levels

---

[2] There are exceptions to the exhaustion requirement, but they are few and narrow in scope. For example, an inmate's subjective belief about the futility of the exhaustion process or his misunderstanding about the process are irrelevant in determining whether administrative procedures are available. *Chelette v. Harris*, 229 F.3d 684, 688 (8th Cir. 2000).

4

before filing a § 1983 lawsuit. *Doc. 24-2 at 19*.

At "Step One," the grievance process begins when an inmate submits, using a unit level grievance form, a claim to the designated unit-level problem solver within fifteen calendar days of the incident.[3] The statement of the claim must be "specific as to the substance of the issue or complaint to include the date, place, personnel involved or witnesses, and how the policy or incident affected the inmate . . ." *Doc. 24-2 at p. 6*. A problem solver then investigates the complaint, and if it cannot be resolved, he or she documents the resolution attempt at the bottom of the grievance form, and the inmate and the problem solver sign and date the form. *Id. at 7-8*. At this point, the inmate has three days to proceed Step Two, using the same form. *Id. at 8.*

At "Step Two," the inmate may file a formal grievance on the same form used at Step One, explaining why the informal resolution was unsuccessful. *Doc. 24-2 at 9.* Within five days of receiving a formal grievance, a grievance officer provides the inmate a form that either acknowledges or rejects the grievance. *Id. at 10, 21*. If the grievance is accepted, the acknowledgment form provides an expected response date (*Id. at 21*), and if no response is received by that date, the inmate may proceed to

---

[3] Technically, an inmate's claim asserted at Step One does not become a formal "grievance" until it proceeds to Step Two, where it is then assigned a grievance number. Because ADC officials, when processing grievances, refer to the filing of a Step One informal resolution as filing a grievance, the Court will do the same.

"Step Three." *Id. at 11*.

At "Step Three," if the inmate receives no response or is unsatisfied with a response at Step Two, he or she may appeal to a deputy director, who either rejects the appeal or provides a response, at which point the grievance process is exhausted. *Id. at 11-12*.

Thus, to properly exhaust his administrative remedies with respect to each claim asserted against each Defendant, Mr. Featherston was required to present each claim in a timely filed grievance and appeal it through all three steps of the ADC's grievance process. *See Woodford*, 548 U.S. at 90 (explaining that administrative exhaustion "means using all steps that the agency holds out, and doing so *properly* (so that the agency addresses the issues on the merits)") (emphasis in original); *Johnson v. Jones*, 340 F.3d 624, 627 (8th Cir. 2003) (holding an inmate must exhaust all available administrative remedies before filing suit, and "[i]f exhaustion was not completed at the time of filing, dismissal is mandatory").

### C. Mr. Featherston's Grievances

In support of their motion, Defendants submit the declaration of Terri Grigsby-Brown, the ADC Inmate Grievance Supervisor, stating that she reviewed Mr. Featherston's grievance file and that none of his grievances exhaust claims that Defendants Lewis, Childress, or Lowe failed to protect him from other inmates on September 25, 2020 or on December 2, 2020. *Doc. 24-1, pp. 6-7*. The following is a

discussion of the 15 relevant grievances Mr. Featherston filed from September 15, 2020 to January 5, 2021, the date he filed this lawsuit.[4] *Docs. 24-1; 24-3; 31*.

### (1) WR-20-00353

On September 15, 2020, Mr. Featherston filed grievance WR-20-00353, complaining that Defendant Lewis threatened him with a disciplinary for calling the state police hotline. *Doc. 24-3 at 12-15*. Mr. Featherston further complains that the state hotline was put in place to protect inmates from harassment, and that Defendant Lewis violated Mr. Featherston's due process rights by threatening him with disciplinary action for using the hotline. *Id*. This grievance failed to put ADC officials on notice that Mr. Featherston claimed that Defendant Lewis failed to protect him by portraying him as a "snitch" in the presence of an inmate with gang affiliations, as alleged in the complaint. Accordingly, grievance WR-20-00353 does not exhaust any of the claims raised in this lawsuit.

### (2) WR-20-00351

On September 26, 2020, Mr. Featherston filed grievance WR-20-00351, complaining that Defendant Childress backdated three of his grievances to make it appear, falsely, that she responded to the grievances in a timely manner. *Doc. 24-3,*

---

[4] In Mr. Featherston's response to Defendants' motion for summary judgment, he attached grievances WR-21-0059, WR-21-0058, WR-21-00094, and an unnumbered grievance filed on April 26, 2021. *Doc. 31 at 26-34*. Because these grievances were all filed *after* Mr. Featherston filed this lawsuit, Mr. Featherston could not have possibly fully exhausted any of the claims in these grievances *before* filing this lawsuit.

*pp. 4-7*. This grievance does not raise any of Mr. Featherston's failure-to-protect claims against Defendant Childress, rather it complains about her handling of the grievance process. Accordingly, grievance WR-20-00351 does not exhaust any of the claims brought in this lawsuit.

### (3)   WR-20-00352

On September 26, 2020, Mr. Featherston filed grievance WR-20-00352, complaining that: (1) Sergeant Platt (not a named Defendant) failed to inform Defendant Lowe that Mr. Featherston was being harassed; and (2) Sergeant Platt's failure to inform Defendant Lowe resulted in the September 25, 2020 attack. *Doc. 24-3, pp. 8-11*. Grievance WR-20-00352 complains about a nonparty's failure to act and fails to exhaust any of the claims brought against any of the named Defendants in this lawsuit.

### (4)   Grievances Rejected As Exceeding Five Grievances Per Week

On September 29, 2020, Mr. Featherston appealed eight grievances to Step Two. ADC officials considered three grievances (WR-20-00351, WR-20-00352, and WR-20-00353, discussed above), but the additional five (WR-20-00354, WR-20-00355, WR-20-00356, WR-20-00358, and WR-20-00359) were rejected as exceeding the weekly limit on grievances. *Doc. 24-3 at 4-28*. Mr. Featherston argues that ADC personnel thwarted his efforts to exhaust administrative remedies by failing to acknowledge the receipt of grievances WR-20-00354, WR-20-00356, WR-

20-00358, and WR-20-00359.[5] *Doc. 31*. However, the ADC grievance policy is clear: "Inmates are only allowed to submit three formal grievances, Step Two, each seven-day period." *Docs. 24-2 at 15; 24-1, ¶ 36*. Because Mr. Featherston exceeded the five-grievance-per-week limit, any failure to acknowledge the receipt of the grievances did not render the grievance process unavailable to him. Additionally, on October 6, 2020, Mr. Featherston was informed in writing that, due to his violation of the policy, only three of his eight grievances had been acknowledged. *Doc. 31 at 21*. At this point, Mr. Featherston still had several days to file a timely Step One grievance complaining about his September 25, 2020 attack, but he failed to do so.

Mr. Featherston may not like the grievance policy but that does not amount to the process being unavailable. Accordingly, grievances WR-20-00354, WR-20-00355, WR-20-00356, WR-20-00358, and WR-20-00359 were appropriately rejected as exceeding Mr. Featherston's weekly limit and cannot be relied on as exhausting the failure-to-protect claims Mr. Featherston raises in this lawsuit.

**(5)    WR-20-00367 and WR-20-00368**

Mr. Featherston filed two additional grievances (WR-20-00367 and WR-20-00368) in September. *Doc. 24-3 at 29-32*. Grievance WR-20-00367 was rejected as

---

[5] In Mr. Featherston's response, he does not argue that he was thwarted from exhausting grievance WR-20-00355. *Doc. 31*. However, Mr. Featherston attaches a copy of grievance WR-20-00355 to the response. *Doc. 31 at 32*.

untimely at the unit level. *Docs. 24-1 at 8; 24-3 at 29*. Grievance WR-20-00368 was rejected because it complained about a disciplinary matter and, therefore, raised a non-grievable issue. *Doc. 24-3 at 31-32*. Mr. Featherston makes no argument and produces no evidence that he appealed either rejection. *Docs. 24-3 at 29-32; 31*. Accordingly, grievances WR-20-00367 and WR-20-00368 were rejected at the unit level and did not fully exhaust any claims Mr. Featherston brought in this lawsuit.

### (6) WR-20-00373

On October 2, 2020, Mr. Featherston filed grievance WR-20-00373, complaining about the grievance process, explaining that he had not received acknowledgments on five grievances that he had filed. *Doc. 24-3 at 16-19*. Grievance WR-20-00373 does not raise any of Mr. Featherston's failure-to-protect claims therefore cannot exhaust any of the claims against any of the named Defendants in this lawsuit.

### (7) WR-20-00377

On October 11, 2020, Mr. Featherston filed grievance WR-20-00377, complaining that on October 10, 2020, Defendant Childress retaliated against him by refusing to sign a check for him. *Doc. 24-3, pp. 20-23*. Grievance WR-20-00373 does not raise any of Mr. Featherston's failure-to-protect claims and does not exhaust any of the claims Mr. Featherston brought in this lawsuit.

Ms. Grigsby-Brown's Declaration notes that Mr. Featherston also filed

medical grievances (WR-20-00421; WR-00422; WR-20-00423) that were acknowledged on January 4 and 5, 2021, but he had not exhausted any of these medical grievances when he filed this lawsuit on January 5, 2021.[6] *Doc. 24-1 at 9.* According to Ms. Grigsby-Brown's Declaration, these three medical grievances were still not exhausted as of January 26, 2021. *Doc. 24-1, p.* 9. Because Mr. Featherston did not fully exhaust these medical grievances *before* he filed this lawsuit, grievances WR-20-00421, WR-00422, WR-20-00423 could not exhaust any of Mr. Featherston's claims.

## III. Conclusion

IT IS THEREFORE RECOMMENDED THAT:

1. Defendant Carl Lewis, Lisa D. Childress, and Michael M. Lowe's motion for summary judgment for failure to exhaust administrative remedies (*Doc. 24*) be GRANTED and judgment be entered in favor of Defendants Lewis, Childress and Lowe.

2. All the claims in this lawsuit be DISMISSED, without prejudice, because Plaintiff Joshua M. Featherston failed to exhaust his administrative remedies against Defendants before filing this lawsuit.

---

[6] Neither party produced grievances WR-20-00421, WR-00422, or WR-20-00423 for the Court to review. *Docs. 24-3; 31.* However, Mr. Featherston does not dispute Ms. Grigsby-Brown's Declaration that these three medical grievances could not have exhausted Mr. Featherston's claims before he filed this lawsuit. *Docs. 29-31.*

Dated this 16th day of August, 2021.

```
_____
UNITED STATES MAGISTRATE JUDGE
```